**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - -X

In re:   THERESA ANN BOYD,

                                Chapter 13
                                Case No. 08-14279  (RTL)

           Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - - -X

**OPINION**

**APPEARANCES:**

William M. E. Powers III, Esq.
Powers Kirn, LLC
Attorney for U.S. Bank Home Mortgage

Howard Schmidt, Esq.
Attorney for Albert Russo, Standing Chapter 13 Trustee

Steven Abelson, Esq.
Attorney for Debtor

**RAYMOND T. LYONS, U.S.B.J.**

**INTRODUCTION**

      Before the court is a chapter 13 secured creditor's fee application for post-petition,

preconfirmation attorney's fees incurred in the course of responding to the Debtor's motion to

modify its claim.  The issue is whether a secured creditor is entitled to include these

post-petition, preconfirmation attorney's fees in its claim, essentially shifting its costs of

litigation to the Debtor.  Under § 1322(e) of the Bankruptcy Code "the amount necessary to cure

the default, shall be determined in accordance with the underlying agreement and applicable

nonbankruptcy law." 11 U.S.C. § 1322(e).  Since the note contains a fee shifting provision that is

enforceable under New Jersey law, the mortgagee's post-petition, preconfirmation fees may be

included in the amount necessary to cure the default.

## JURISDICTION

This court has jurisdiction of this contested matter under 28 U.S.C. § 1334(b), 28 U.S.C.

§ 157(a) and the Standing Order of Reference by the United States District Court for the District

of New Jersey dated July 23, 1984, referring all proceedings arising under Title 11 of the United

States Code to the bankruptcy court.  This is a core proceeding within the meaning of 28 U.S.C.

§ 157(b)(2)(B) and (L) concerning the allowance of a claim and confirmation of a plan.

## BACKGROUND

This fee application arises in a chapter 13 case.  Here, the Debtor owns a residence

together with her spouse encumbered by two mortgages.  The first mortgage is held by U.S.

Bank Home Mortgage (hereinafter "US Bank") and a second is held by Bank of America.  Both

claims are oversecured, as the Debtor's bankruptcy schedule lists the value of her one half

interest in the residence to be higher than the combined secured claims.

The Debtor entered into her mortgage agreement with US Bank on April 24, 2001.

Included in the agreement was a fee-shifting provision in the event of a default:

> 6. BORROWER'S FAILURE TO PAY
>     . . .
>         (C) Payment of Costs and Expenses
>         If Lender has required immediate payment in full, as described above,
> Lender may require Borrower to pay costs and expenses including reasonable and
> customary attorney's fees for enforcing this Note to the extent not prohibited by
> applicable law.  Such fees and costs shall bear interest from the date of
> disbursement at the same rate as the principal of this Note.

2

Roughly two years later, on August 30, 2003, the mortgage was modified following some hardship and a subsequent default.  The Debtor defaulted a second time and the mortgage was modified once more on June 1, 2007.  On January 8, 2008, the Debtor defaulted for a third time, and US Bank commenced a foreclosure proceeding in state court.

Just prior to the entry of the foreclosure judgment, on March 11, 2008, the Debtor filed a petition under chapter 13 of the Bankruptcy Code.  The Debtor also filed a chapter 13 plan in concert with her petition.  The plan primarily proposed to cure the arrears the Debtor owed to US Bank and Bank of America.

US Bank timely filed its proof of claim on April 28, 2008, for $211,527.11.  In addition to the unpaid principal of $166,225.03 and the pre-petition arrears of $12,686.12, US Bank's claim included escrow shortages, legal fees, and interest to amortize these advances.  The Debtor objected to US Bank's claim.  Multiple briefs were filed by the Debtor and US Bank in support of their positions.  Ultimately, this court overruled the Debtor's objection and allowed US Bank's claim as filed.

The instant fee application arises out of the additional legal fees incurred by US Bank in litigating the Debtor's objection to its claim.  The amount sought is $3,642.50, less $625 already included in the original proof of claim.  This total figure was calculated using the lodestar method and itemized the time spent responding to the Debtor's objection to its claim and opposing confirmation of the Debtor's plan.  In a supplemental pleading, US Bank produced proof that it had been billed for, and approved payment of, the same amount of attorney's fees requested in its application.

The Debtor now objects that: (i) there is no basis for the creditor to charge back the

3

Debtor, (ii) the amount of fees are unreasonable, (iii) it is questionable whether the mortgagee actually incurred the amount of fees requested, (iv) part of the mortgagee's objection to confirmation was overruled, and (v) allowing additional fees to the mortgagee would chill Debtor's rights under the Bankruptcy Code.  She argues, "If this application is permitted, no debtor would ever dare challenge a creditor for fear of retribution."  The Trustee also objects, citing the fees as excessive, without legal authority, and without disclosure of the fee agreement between the creditor and its attorney.  The court reviewed the detailed time entries and the hourly rate and finds the fees reasonable.  The creditor provided proof that its obligation to pay attorney's fees matches the amount of reimbursement being sought from the Debtor. Additionally, the court rejects the argument that the fees should be disallowed because the mortgagee's objection to confirmation was overruled; this was a minor issue that did not generate significant legal fees.  The only issue that merits further consideration is the argument by the Debtor and the Trustee that there is no legal basis to require the Debtor to reimburse the mortgagee for its legal fees.

## DISCUSSION

The issue before the court is whether a secured creditor in a chapter 13 case is entitled to its post-petition, preconfirmation attorney's fees as part of the arrears to be cured.  The Third Circuit squarely addressed this issue in the non-precedential opinion, *Smiriglio v. Hudson United Bank (In re Smiriglio)*, 98 Fed.Appx. 914 (3d. Cir. 2004).  The debtors in *Smiriglio* had defaulted on a guarantee agreement that was secured by their personal residence.  Prior to the filing of a foreclosure action by the mortgagee, the debtors commenced their bankruptcy case.  *Id.* at 916.

4

The debtors intended to retain their home by proposing a cure plan under chapter 13.[1]  The

mortgagee's oversecured claim became the subject of litigation as the parties fought over the

mortgagee's lien position on the real property.  The dispute was resolved in favor of the

mortgagee, and the mortgagee moved to include post-petition, preconfirmation attorney's fees

into its arrearage claim, as provided for in the note and guarantee.  *Id.* at 914.  Both the

bankruptcy court and district court sided with the creditor.  *Id.*

The Third Circuit first observed that the New Jersey law on attorney's fees was

consistent with the American Rule:  "[T]he parties bear the burden of their own counsel fees."

*Id.* at 915 (*citing McKeown-Brand v. Trump Castle Hotel & Casino*, 132 N.J. 546, 626 A.2d 425,

429 (1993)); *see also, Hatch v. T & L Assocs.*, 319 N.J.Super. 644, 726 A.2d 308, 309 (App.Div.

1999).  Next, the Third Circuit acknowledged that New Jersey law also respected the general

right to contract and allowed for the shifting of reasonable attorneys fees where specified in an

agreement.  *Smiriglio*, 98 Fed.Appx. at 915 (citing *Alcoa Edgewater No. 1 Fed. Credit Union v.*

*Carroll*, 44 N.J. 442, 210 A.2d 68, 72 (1965); *Belfer v. Merling*, 332 N.J.Super. 124, 730 A.2d

434, 443 (1999)).  The agreement in *Smiriglio* provided that the debtor was obligated to

reimburse the lender for its legal fees and since that agreement was enforceable under New

Jersey law, "the amount of the arrearage must be 'determined in accordance with the underlying

agreement and applicable nonbankruptcy law,' as provided under § 1322(e)."  *Smiriglio*, 98

---

[1] In chapter 13, a debtor may retain their real property and cure a default on a secured
claim through the chapter 13 plan.  Section 1332(e) provides:
> Notwithstanding subsection (b)(2) of this section and sections 506 (b) and 1325
> (a)(5) of this title, if it is proposed in a plan to cure a default, the amount
> necessary to cure the default, shall be determined in accordance with the
> underlying agreement and applicable nonbankruptcy law.
11 U.S.C. § 1332(e).

Fed.Appx. at 915 (quoting 11 U.S.C. § 1322(e)).  The Third Circuit affirmed the decisions of the

bankruptcy and district courts allowing the inclusion of the lender's legal fees and expenses in

the arrears cured under the plan.

      The facts of this case are similar to those present in *Smiriglio*.  As in *Smiriglio*, the

Debtor entered into and defaulted upon a mortgage agreement with an explicit fee-shifting

clause.  The Debtor then commenced a bankruptcy case under chapter 13 and sought to retain her

residence through a cure plan.  During the bankruptcy case, the mortgagee had to defend its

claim, accumulating legal fees in the process.  The mortgagee then sought to amend its claim to

be compensated for its attorney's fees.  Consequently, the legal conclusions that the Third

Circuit arrived at in *Smiriglio* are directly applicable to the instant case.  By proposing a cure

plan, the Debtor is similarly obligated by § 1322(e) to cure her arrears according to the

underlying agreement and applicable nonbankruptcy law.  The underlying agreement is

enforceable under New Jersey law, so the amount necessary to cure the arrears must include the

mortgagee's reasonable attorney's fees and expenses.

      Neither the Debtor nor the Trustee have argued that US Bank's fees should be limited by

the New Jersey Court Rule 4:42-9(a)(4).[2]  They both maintain that fee shifting is inappropriate.

---

[2]New Jersey Court Rule 4:42-9, in relevant part, provides:
4:42-9. Counsel Fees
(a) Actions in Which Fee Is Allowable. No fee for legal services shall be allowed in the taxed
costs or otherwise, except . . .
(4) In an action for the foreclosure of a mortgage, the allowance shall be calculated as follows:
on all sums adjudged to be paid the plaintiff amounting to $5,000 or less, at the rate of 3.5%,
provided, however, that in any action a minimum fee of $75 shall be allowed; upon the excess
over $5,000 and up to $10,000 at the rate of 1.5%; and upon the excess over $10,000 at the rate
of 1%, provided that the allowance shall not exceed $7,500. If, however, application of the
formula prescribed by this rule results in a sum in excess of $7,500, the court may award an
additional fee not greater than the amount of such excess on application supported by affidavit of

6

Their position is refuted by § 1322(e) and *Smiriglio*.  There is no reason for this court to consider whether US Bank's application for reimbursement of attorney's fees should be limited by the New Jersey Court Rule.[3]

While *Smiriglio* is a non-precedential Third Circuit opinion, this court is comfortable in relying upon it.  It is clear that a non-precedential opinion ("NPO") of the Third Circuit is not precedent for the district courts below.  *In re: Grand Jury Investigation, No. 06-1474*, 445 F.3d 266, 276 (3d. Cir. 2006) (reasoning that because the Third Circuit's Internal Operating Procedures do not regard NPOs as precedent binding upon itself, NPOs "are not precedents for the district courts of this circuit").  However, nothing bars the lower courts for relying on NPOs as strongly persuasive authority.  *Id.* ("[The Third Circuit] does not prohibit citation to NPOs but the members of this court regard them for what they are worth--the opinion of three members of the court in a particular case."); *Prudential Property and Cas. Ins. Co. v Jefferson*, 185 F.Supp.2d 495, 499 n.1 (W.D. Pa. 2002) ("An 'unreported-not precedential' opinion [of the Third Circuit] is not binding authority, but may be cited as persuasive authority."); *see also*, *Drinker by Drinker v. Colonial School Dist.*, 78 F.3d 859, 864 n.12 (3d. Cir. 1996) (the Third Circuit noting that because of the factual similarity to a prior NPO, it looked to the opinion as "a paradigm of the legal analysis we should here follow"); *In re Hess*, 209 B.R. 79, 82 n.3 (B.A.P.

---

services. In no case shall the fee allowance exceed the limitations of this rule.

[3]Compare this court's decision in *In re Hatala*, 295 B.R. 62 (Bankr. D.N.J. 2003), where the mortgagee had received its foreclosure judgment prior to the debtor's bankruptcy filing.  In this pre-*Smiriglio* case, the court decided that the mortgagee was limited to attorney's fees allowed by Rule 4:42-9(a)(4).  There may be some question as to whether *Hatala* is still good law after the *Smiriglio* decision.  *But see*, *In re Lipscomb*, No. 05-18722/JHW, 2006 WL 4452988, at *4-5 (Bankr. D.N.J. May 17, 2006) (discussing *Hatala*, distinguishing it from the ruling in *Smiriglio*, and finding *Hatala* to still be good law).

6th Cir. 1997) ("Although unpublished decisions of the Sixth Circuit are not binding precedent,

they can be cited if persuasive, especially where there are no published decisions which will

serve as well."); *In re Mays*, 256 B.R. 555, 558-59 (Bankr. D.N.J. 2000) (reasoning that absent

any prohibition of the use of unpublished opinions, they may be relied upon).

This conclusion is further bolstered on two other accounts.  First, the practice of

awarding post-petition, preconfirmation attorney's fees is already condoned by District of New

Jersey Local Bankruptcy Court Rule 2016-1(j)(3).  D.N.J. LBR 2016-1(j)(3).  Local Bankruptcy

Rule 2016-1(j)(3) sets guidelines for the application of such fees and also permits a "no-look"

baseline fee of $400 for routine post-petition, preconfirmation services.  *Id.*  Second, by

reviewing other opinions that have examined the imposition of attorney's fees under § 1322(e),

this court finds that a majority of courts have ruled in line with the Third Circuit's decision in

*Smiriglio*.  *See In re Atwood*, 293 B.R. 227, 231-32 (B.A.P. 9th Cir. 2003); *In re Thompson*, 372

B.R. 860, 863-64 (Bankr. S.D. Ohio 2007)*, In re Gagne*, 378 B.R. 439, 443 (Bankr. D.N.H.

2007); *In re Taylor*, No. 02-10695, 2003 WL 22282173, at *3-4 (Bankr. D. Vt. Oct.1, 2003)

("While there was previously some dispute about whether § 1322(e) applied to attorney's fees,

commentators and recent decisions appear to be in consensus that the statute does, indeed, apply

to attorney's fees."); *In re Plant*, 288 B.R. 635, 641-42 (Bankr. D. Mass. 2003); *In re McMullen*,

273 B.R. 558, 561 (Bankr. C.D. Ill. 2001); *In re Landrum*, 257 B.R. 577, 581 (Bankr. S.D. Ohio

2001); *but see*, *In re Madison*, 337 B.R. 99, 102-3 (Bankr. N.D. Miss. 2006) ("The non-

contractual, non-statutorily authorized interest on interest and interest on other fees, permitted by

the *Rake v. Wade* decision, were the driving issues prompting the enactment of § 1332(e), not the

allowance of post-petition legal fees.  A charge for the preparation and filing of a proof of claim

8

is not a *default* that is being *cured*."); *In re Evans*, 336 B.R. 749, 752-56 (Bankr. S.D. Ohio

2006) (finding that § 1332(e) must be read in conjunction with § 506(b) and thus, a creditor must

be oversecured in order for fees to be included in an arrearage).

     The court is also unpersuaded by the Debtor's and Trustee's appeals to public policy.

The Debtor suggests in particular that the court's condonation of fee shifting would chill debtors

from pursuing their rights under the Bankruptcy Code, as no debtor would dare to challenge a

creditor for fear of retribution in the form of attorney's fees.  Assuming that an appeal to public

policy is well-founded, it is "axiomatic that a court may refuse to enforce a contract that violates

public policy." *Fields v. Thompson Printing Co., Inc.*, 363 F.3d 259, 268 (3d. Cir. 2004).

However, a court's refusal to enforce a contract is not a trivial decision, and there is a high

threshold as indicated by the Third Circuit: "Such a public policy, however, must be well-

defined and dominant, and is to be ascertained by reference to the laws and legal precedents and

not from general considerations of supposed public interests." *Id.* (internal quotes omitted)

(citing *W.R. Grace & Co. v. Local 759*, 461 U.S. 757, 766 (1983)).  Debtor and Trustee have not

advanced any "well-defined" and "dominant" principles to support the invalidation of US Bank's

contract; the threat of a chilling-effect on debtors' litigation is simply not sufficient.

     Furthermore, while the potential chilling effect on debtor litigation and claims opposition

is well taken by this court, the concept of cost-balancing as a factor in litigation strategy is not

new to the bankruptcy realm.  Debtors have no absolute right to pursue claims for the estate, and

instead, counsel for debtors must constantly weigh the risks and benefits of litigation.  *In re

Taxman Clothing Co.*, 49 F.3d 310, 315 (7th Cir. 1995) ("[T]he care, diligence, and skill that a

lawyer for the debtor's estate . . . is required to bestow as a part of his fiduciary duty is not

merely care, diligence, and skill in the prosecution of the estate's claims.  It is also care, diligence, and skill in deciding *which* claims to prosecute, and how far.") (emphasis added). Though Debtor's objection to US Bank's claim was not frivolous, it too must be weighed against the possible benefit to the Debtor and the probability of success.  Conversely, the court's ruling does not grant an "open season" for secured creditors to incur excessive fees with impunity. Counsel for creditors must still engage in the same risk and outcome balancing act.  There are mechanisms in place to ensure that the creditor's fees are reasonable in quantity and purpose, as they are in the instant case.

## **CONCLUSION**

Section 1322(e) is unambiguous in its direction to refer to the underlying agreement and nonbankruptcy law in the case where a Debtor is seeking to cure her arrears under chapter 13. Because the court finds that US Bank is entitled to post-petition, preconfirmation fees under its agreement with the Debtor and applicable nonbankruptcy law, the fee application is granted as submitted.

Dated: December 9, 2008                    **/S/Raymond T. Lyons**

                                           United States Bankruptcy Judge

10